IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BENJAMIN ELLIS,

    Plaintiff,

v.

J. D. BENNETT,

    Defendant.

No. C 09-00247 SBA (PR)

**ORDER OF SERVICE**

Plaintiff Benjamin Ellis, a state prisoner currently incarcerated at Salinas Valley State Prison (SVSP), has filed the present pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging a violation of his constitutional rights while incarcerated at SVSP. His motion for leave to proceed in forma pauperis has been granted.

Venue is proper in this district because the events giving rise to the action occurred at SVSP, which is located in this district. See 28 U.S.C. § 1371(b).

**BACKGROUND**

Plaintiff, who suffers from paralysis and is wheelchair-bound, alleges that while he was incarcerated at SVSP, Defendant SVSP Lieutenant J. D. Bennett violated his Eighth Amendment and due process rights.

Plaintiff contends that on March 11, 2005, he was released from Natividad Medical Center, where he had been hospitalized after undergoing surgery on his leg. (Id. at 5.) In addition to his paralysis and recent surgery, Plaintiff suffers from numerous ailments, including "chronic recurrent right side pain juxtapose paralysis of lower extremities function, with loss of bladder and bowel control."[1] (Id.) After spending five days at the SVSP Correctional Treatment Center (CTC), Plaintiff was transferred to an Americans with Disabilities Act (ADA) accommodation cell. (Id. at 3.) Plaintiff alleges that on March 18, 2005, Defendant Bennett instructed him that he would have to give up his ADA cell to accommodate an administrative segregation (Ad seg.) non-disabled inmate. (Id. at 5.) Defendant Bennett also informed Plaintiff that he "would be temporarily housed in a cell on the Enhanced Outpatient Program (EOP) yard ('yard for the mentally challenged inmates.')" (Id.)

---

[1] In his complaint, Plaintiff is unclear about which injuries are a result, or related to, his recent surgery and which, if any, predated the surgery.

When Plaintiff questioned this instruction, "[Defendant] Bennett became enraged and without notice or cause energetically having great vitality and force, grabbed his wheelchair at the handles utilizing an unauthorized cell extraction tactic to forcefully remove plaintiff from his cell, causing plaintiff to fall forward." (Id. at 6.) Plaintiff allegedly attempted to catch himself by grabbing hold of the sink but "was unsuccessful and . . . ended up falling striking the concrete floor." (Id.) As Plaintiff lay in a "mangled and twisted state," the fall caused him to defecate and urinate on himself. (Id.)

Plaintiff alleges that Defendant Bennett then began "shouting derogatory language at plaintiff as a form of intimidation, stating 'Get your as [sic] up or else.  There is nothing wrong with you.  Get up, you can walk.'" (Id.) Plaintiff further contends that he told Defendant Bennett about his recent surgery, and that while Defendant Bennett saw that Plaintiff was lying in urine, Plaintiff received no assistance. Plaintiff claims that he lay "in waste and severe pain" for over two hours, until the fire department arrived to assist him. (Id. at 6-7.) After receiving care, including pain medication, at the CTC, Plaintiff "was escorted to Ad seg. at the order of Lt. Bennett." (Id. at 7.)

Plaintiff also contends:

> Lt. Bennett maliciously and sadistically placed him into punitive segregation/Ad seg. by-way of a bogus lock-up order . . . .  Lt. Bennett's reasons for placing plaintiff in Ad seg. was that plaintiff's "continue [sic] presence is deemed a threat to the safety and security of the institution, staff and the inmate population."  But yet, no disciplinary charges were served on plaintiff; no reports were filed by Lt. Bennett of the incident in question, which indicates both a cover-up and a consciousness of guilt.  At his hearing with the SVSP's institution committee, to determine said lock-up order, it was unanimously decided that there were no valid reason(s) for plaintiff being in Ad seg.  Plaintiff was released back into general population; Plaintiff lost [sic] of privileges were restored, [and] Plaintiff was also placed back into a ADA-cell where he would continue recovery from surgery.

(Id.)

Plaintiff claims that he exhausted his administrative remedies with respect to this claims. He seeks monetary compensation for his physical and emotional injuries.

## DISCUSSION

### I. Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

2

§ 1915A(a). It its review, the court must identify cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

## II.    Plaintiff's Claims

### A.    Eighth Amendment Claims

A prisoner has the right to be free from cruel and unusual punishment, including physical abuse by prison guards. Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citing Whitley v. Albers, 475 U.S. 312, 317 (1986)).

Plaintiff alleges that he suffered excessive force when Defendant Bennett grabbed his wheelchair to forcefully remove Plaintiff from his cell. (Compl. at 3, 6.) Plaintiff alleges that this act caused him to fall from his wheelchair. (Id.) Based on his allegations, the Court is unable to say that Plaintiff can prove no set of facts which would entitle him to relief in support of his claim of the malicious and sadistic use of force. Accordingly, the Court finds cognizable Plaintiff's excessive force claim against Defendant Bennett.

Plaintiff's allegations relating to his cell extraction also give rise to a claim for deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976) (deliberate indifference to serious medical needs presents a cognizable claim for violation of the Eighth Amendment). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to

3

1  that need. See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992). A "serious" medical need
2  exists if the failure to treat a prisoner's condition could result in further significant injury or the
3  "unnecessary and wanton infliction of pain." Id. (citing Estelle v. Gamble, 429 U.S. at 104). A
4  prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious
5  harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511
6  U.S. 825, 837 (1994). Plaintiff states that after Defendant Bennett caused him to fall of his
7  wheelchair, Defendant Bennett refused to provide any assistance in lifting him off the floor; as a
8  result, Plaintiff lay in pain in his own excrement for two hours. (Compl. at 6.) Defendant Bennett's
9  refusal to aid Plaintiff was allegedly despite his awareness of Plaintiff's recent surgery. (Id.) Based
10 on his allegations, the Court finds cognizable Plaintiff's deliberate indifference claim against
11 Defendant Bennett.

**B.      Due Process Claim Related to Plaintiff's Initial Placement in Ad Seg.**

13 Plaintiff asserts that Defendant Bennett "maliciously and sadistically placed him into punitive
14 segregation/Ad seg." (Compl. at 7.) Construing his complaint liberally, Plaintiff seems to be
15 challenging his initial placement in Ad seg. pending investigation by SVSP.
17 In Toussaint v. McCarthy, the Ninth Circuit held that when prison officials initially
18 determine whether a prisoner is to be segregated for administrative reasons due process requires that
19 they comply with the following procedures: (1) they must hold an informal nonadversary hearing
20 within a reasonable time after the prisoner is segregated, (2) the prisoner must be informed of the
21 charges against him or the reasons segregation is being considered, and (3) the prisoner must be
22 allowed to present his views. See Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986). Due
23 process does not require detailed written notice of charges, representation by counsel or counsel-
24 substitute, an opportunity to present witnesses, a written decision describing the reasons for placing
25 the prisoner in administrative segregation or disclosure of the identity of any person providing
26 information leading to placement of a prisoner in administrative segregation. See id. at 1100-01.
27 Before a prisoner may be placed in disciplinary segregation for the violation of prison rules,
28 he or she must be afforded greater procedural protections than those set out in Toussaint.

4

First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." See Wolff v. McDonnell, 418 U.S. 539, 564 (1974). Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." See id. Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. Fifth, "[w]here an illiterate inmate is involved . . . or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or from a[n] . . . inmate designated by the staff." Id. at 570.

Here, Plaintiff is complaining of his initial placement in Ad seg. pending disciplinary proceedings. His claim fails because he was provided with all the procedural protections he was due at that stage. In fact, SVSP prison officials informed him that the placement occurred based on Defendant Bennett's claim that Plaintiff's "continue[d] presence [was] deemed a threat to safety and security of the institution, staff and inmate population." (Compl. at 7.) Plaintiff acknowledges that SVSP's "institution committee" held a hearing during which "[i]t was unanimously decided [sic] that there was no valid reasons(s) for Plaintiff being [held] in Ad seg." (Id.) Plaintiff was eventually released into general population, his privileges were restored, and he was placed in an ADA cell.

Accordingly, Plaintiff's due process claim related to his initial placement in Ad Seg. is DISMISSED for failure to state a claim.

## **CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Plaintiff has adequately alleged a COGNIZABLE Eighth Amendment claim against Defendant Bennett for the use of excessive force and for deliberate indifference to Plaintiff's serious medical needs.

5

2. Plaintiff's claim related to his initial placement in Ad Seg. is DISMISSED for failure to state a claim.

3. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint and all attachments thereto (docket no. 1) and a copy of this Order to **SVSP Lieutenant J. D. Bennett**. The Clerk of the Court shall also mail a copy of the complaint and a copy of this Order to the State Attorney General's Office in San Francisco. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

4. Defendant is cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendant, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fails to do so, he will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendant had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendant will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendant is asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendant has been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later.

5. Defendant shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

a. No later than **ninety (90) days** from the date his answer is due, Defendant shall file a motion for summary judgment or other dispositive motion. The motion shall be supported by adequate factual documentation and shall conform in all respects to Federal Rule of

Civil Procedure 56. If Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

b. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendant no later than **sixty (60) days** after the date on which Defendant's motion is filed. The Ninth Circuit has held that the following notice should be given to pro se plaintiffs facing a summary judgment motion:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted [in favor of the defendants], your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendant's dispositive motion. Such evidence may include sworn declarations from himself and other witnesses to the incident, and copies of documents authenticated by sworn declaration. Plaintiff will not be able to avoid summary judgment simply by repeating the allegations of his complaint.

c. If Defendant wishes to file a reply brief, he shall do so no later than **thirty (30)**

**days** after the date Plaintiff's opposition is filed.

        d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

    6. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendant to depose Plaintiff and any other necessary witnesses confined in prison.

    7. All communications by Plaintiff with the Court must be served on Defendant, or Defendant's counsel once counsel has been designated, by mailing a true copy of the document to Defendant or Defendant's counsel.

    8. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion

    9. Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fifteen (15) days** prior to the deadline sought to be extended.

IT IS SO ORDERED.

DATED: 1/19/09

                                      *Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

**United States District Court**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

BENJAMIN ELLIS,

        Plaintiff,

  v.

J.D. BENNETT et al,

        Defendant.
                                           /

Case Number: CV09-00247 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 20, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Benjamin F. Ellis P16230
Salinas Valley State Prison
P.O. Box 1050
Soledad, CA 93960-1050

Dated: November 20, 2009

                                        Richard W. Wieking, Clerk
                                        By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.09\Ellis0247.service.frm      9